**Susan Marie NACU, Appellant**

v.

**The STATE of Texas, Appellee.**

**No. 04–11–00281–CR.**

Court of Appeals of Texas,
San Antonio.

May 16, 2012.

John J. Fahle, San Antonio, TX, Stephen G. Peters, El Paso, TX, for Appellant.

Ricardo Vela, Jr., Paul Elizondo Tower, San Antonio, TX, for Appellee.

Sitting: REBECCA SIMMONS, Justice, STEVEN C. HILBIG, Justice, MARIALYN BARNARD, Justice.

## OPINION

Opinion by: REBECCA SIMMONS, Justice.

Appellant Susan Marie Nacu was charged with felony driving while intoxicated, third offense. After the trial court denied her motion to suppress evidence, Nacu entered a plea of *nolo contendere.* She now challenges the trial court's ruling on her motion to suppress evidence. We affirm the trial court's judgment.

### BACKGROUND

On the evening of March 7, 2007, Peggi Ann Williams, the manager of a Crabby Jacks' restaurant, observed an intoxicated customer, Nacu, disturbing other custom-

ers, using profanity, throwing napkins and sugar packets, and asking other customers to buy her alcohol after Crabby Jacks' employees had refused Nacu further alcohol service. Williams recognized that Nacu was intoxicated and asked Nacu on several occasions if she would accept a cab ride home. Nacu refused each offer. When a customer informed Williams that Nacu was in her car in the parking lot attempting to drive away, Williams grabbed a cordless office phone and ran outside.

Before she could dial the non-emergency police line to report Nacu, Williams noticed a police car parked in a lot adjacent to the Crabby Jacks parking lot. Instead of phoning the police, she tapped on Officer Steven Hoffman's window. Hoffman was patrolling for car burglars, and his presence in the parking lot was purely coincidental. Williams testified that she told Officer Hoffman that a "woman had been in my restaurant, I noticed her to be intoxicated and she had gotten in a car." Officer Hoffman asked, "Which woman?" Williams pointed to Nacu's car, and explained, "that vehicle trying to drive between the two metal poles." Williams testified that the two poles were not wide enough to allow Nacu's vehicle to pass and that Nacu almost hit the poles. Hoffman immediately spotted and drove toward Nacu's vehicle without obtaining any further information from Williams. Hoffman followed Nacu for a short distance without activating the patrol car's overhead lights. Nacu drove about twenty feet on a highway frontage road and pulled her vehicle into a different parking lot. Hoffman parked behind her and then activated his overhead lights. Once Hoffman physically approached Nacu, he immediately noticed signs of her intoxication.

Williams and Officer Hoffman testified at the suppression hearing. Hoffman testified that he did not personally observe Nacu commit any traffic violation. He stated his sole basis for the traffic stop was Williams' unsolicited statement, "[Nacu] was too intoxicated to drive." The trial court found both Williams and Hoffman to be credible. The trial court denied Nacu's motion to suppress evidence, and she pleaded *nolo contendere* to driving while intoxicated. Nacu appeals the trial court's ruling.

## MOTION TO SUPPRESS

Nacu contends the trial court erred in denying her motion to suppress and raises two issues on appeal: (1) Officer Hoffman lacked reasonable suspicion to stop Nacu because he failed to corroborate Williams' information, and (2) Williams' conclusory statement to Hoffman that Nacu was "too intoxicated to drive" does not give rise to reasonable suspicion.

### A. Standard of Review

We review a trial court's ruling on a motion to suppress evidence under a bifurcated standard. *Valtierra v. State,* 310 S.W.3d 442, 447 (Tex.Crim.App.2010); *Amador v. State,* 221 S.W.3d 666, 673 (Tex. Crim.App.2007). We give almost total deference to the trial court's factual determinations, but we review de novo the application of law to the facts. *Valtierra,* 310 S.W.3d at 447–48.

### B. Reasonable Suspicion

A valid temporary detention must be reasonable and justified at its inception. *Terry v. Ohio,* 392 U.S. 1, 19–20, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968); *Kothe v. State,* 152 S.W.3d 54, 63 (Tex.Crim.App. 2004). An officer is justified in initiating a traffic stop "if the officer, based upon specific and articulable facts, reasonably surmises that the detained person may be associated with a crime." *Davis v. State,*

829 S.W.2d 218, 219 (Tex.Crim.App.1992) (citing *Terry*, 392 U.S. at 21, 88 S.Ct. 1868). The totality of the circumstances is considered when making a reasonable-suspicion determination, and the standard is an objective one. *Martinez v. State*, 348 S.W.3d 919, 923 (Tex.Crim.App.2011). An officer need not personally observe the traffic violation; under certain circumstances, a stop may be justified if the facts underlying the traffic stop are observed by a civilian-informant. *Brother v. State*, 166 S.W.3d 255, 257–58 (Tex.Crim.App.2005) (citing *Adams v. Williams*, 407 U.S. 143, 147, 92 S.Ct. 1921, 32 L.Ed.2d 612 (1972)). A citizen's tip may justify the initiation of a stop if the tip contains "sufficient indicia of reliability." *Arizpe v. State*, 308 S.W.3d 89, 92 (Tex.App.-San Antonio 2010, no pet.) (quoting *Florida v. J.L.*, 529 U.S. 266, 270, 120 S.Ct. 1375, 146 L.Ed.2d 254 (2000) (internal quotation marks omitted)).

*1. Reliability*

■ The main issue in this case is the reliability of Williams' information. At the time of the incident, Williams did not identify herself by name to Officer Hoffman. Consequently, we treat her as an anonymous citizen informant. We evaluate four factors in determining the reliability of an anonymous citizen's information: "(1) whether the informant provide[d] a detailed description of the wrongdoing; (2) whether the informant observed the wrongdoing firsthand; (3) whether the informant is somehow connected with the police (e.g., a paid informant); and (4) whether the informant place[d] himself in a position to be held accountable for the report." *Arizpe*, 308 S.W.3d at 92 (citing *Pipkin v. State*, 114 S.W.3d 649, 655 (Tex.App.-Fort Worth 2003, no pet.)); *accord Brother v. State*, 166 S.W.3d 255, 258 (Tex.Crim.App.2005). When determining an informant's reliability, courts distinguish between anony-

mous 911–callers and unidentified informants who give unsolicited information to officers in a face-to-face manner. *Arizpe*, 308 S.W.3d at 92–93; *accord State v. Fudge*, 42 S.W.3d 226, 230 (Tex.App.-Austin 2001, no pet.). The face-to-face informant is inherently more reliable than the anonymous 911–caller because the face-to-face informant places himself in a position to be held responsible for his intervention. *Arizpe*, 308 S.W.3d at 93; *see also Mitchell v. State*, 187 S.W.3d 113, 117–18 (Tex.App.-Waco 2006, pet. ref'd); *Hawes v. State*, 125 S.W.3d 535, 538–39 (Tex.App.-Houston [1st Dist.] 2002, no pet.); *Fudge*, 42 S.W.3d at 232.

Here, Williams identified herself to Officer Hoffman as a manager at a restaurant where a customer had become intoxicated, and she explained that the customer was too intoxicated to drive. She then identified the intoxicated person by pointing to Nacu's vehicle. This information is sufficient for establishing the first and second factors for determining reliability. *See Arizpe*, 308 S.W.3d at 92; *see also Brother*, 166 S.W.3d at 258. There is no evidence that Nacu was a paid informant; therefore, the third factor is satisfied. *See Arizpe*, 308 S.W.3d at 92; *see also Brother*, 166 S.W.3d at 258. Finally, the facts show Williams placed herself in a position to be held accountable for her report. *See Arizpe*, 308 S.W.3d at 92; *see also Brother*, 166 S.W.3d at 258. Williams explained to Hoffman that she was a manager at a restaurant. Officer Hoffman's testimony was inconsistent regarding whether Williams stated the name of the restaurant she managed. However, it is undisputed that Officer Hoffman's vehicle was parked in the vicinity of Crabby Jacks and that Hoffman returned to Crabby Jacks after apprehending Nacu where Williams positively identified Nacu and voluntarily agreed to be a witness against her. Based

on these facts, Williams placed herself in a position to be identified and held accountable for the information she provided. *See Arizpe*, 308 S.W.3d at 92; *Fudge*, 42 S.W.3d at 232; *Pipkin*, 114 S.W.3d at 655.

Considering all four factors we used in *Arizpe*, we conclude that Williams' information was reliable. *See Arizpe*, 308 S.W.3d at 92; *see also Brother*, 166 S.W.3d at 258.

### 2. Corroboration

■ Having determined Williams' information was reliable, we must determine "whether the totality of that reliable information provided specific, articulable facts that, combined with reasonable inferences to be derived from those facts, would lead to the reasonable conclusion that the appellant was committing ... some type of criminal activity." *See Derichsweiler v. State*, 348 S.W.3d 906, 915–16 (Tex.Crim. App.2011); *see also Martinez*, 348 S.W.3d at 923. Before detaining a suspect, an officer must corroborate the facts supplied by a citizen-eyewitness. *Brother*, 166 S.W.3d at 258–59, 259 n. 5. However, corroboration does not require the officer to personally observe criminal conduct; "[r]ather, corroboration refers to whether the police officer, in light of the circumstances, confirms enough facts to reasonably conclude that the information given to him is reliable and a temporary detention is thus justified." *Id.* at 259 n. 5; *see also Dixon v. State*, 206 S.W.3d 613, 616 n. 13, 617 n. 17, 618–19 (Tex.Crim.App.2006).

Considering the totality of the circumstances, Officer Hoffman's seventeen years of police experience, and the reliability of Williams' information, we hold Officer Hoffman corroborated enough facts to justify a temporary detention of Nacu. *See Derichsweiler*, 348 S.W.3d at 916 (Tex. Crim.App.2011); *Brother*, 166 S.W.3d at 258–59. Williams ran into a parking lot while holding a cordless indoor-phone.

She obtained Officer Hoffman's attention by tapping on his police car's window. She explained that she was the manager of a restaurant, a customer became intoxicated at her restaurant, and now the customer was attempting to drive away. There was a restaurant in the vicinity of Hoffman's patrol car. Williams identified the intoxicated customer by pointing to the customer's vehicle and describing it as the one that was trying to get through two metal poles. The metal poles were too narrow to allow passage of Nacu's vehicle, and Nacu almost ran into them. Hoffman testified that Williams appeared trustworthy. Because of the immediacy and danger that intoxicated drivers pose to the public, Hoffman pursued Nacu without obtaining further identifying information from Williams.

These are sufficient facts to establish reasonable suspicion. *See Martinez*, 348 S.W.3d at 923; *cf. Derichsweiler*, 348 S.W.3d at 917 (determining reasonable suspicion existed where officer was dispatched because a motorist was pulling up to parked vehicles and staring at them in a "bizarre" manner). Because Officer Hoffman corroborated Williams' reliable information, he was not required to follow Nacu until he personally observed a traffic violation. *Brother*, 166 S.W.3d at 259 ("To require officers who are apprised of detailed facts from citizen-eyewitnesses to observe suspects and wait until additional suspicious acts are committed, would be foolish and contrary to the balance of interests struck in *Terry* and its progeny.").

### 3. Conclusory Statements

■ Nacu contends that even if Williams' information was reliable and was corroborated, the information did not justify the stop because the statement "too intoxicated to drive" is purely conclusory. Nacu relies on the court of criminal ap-

peals' holding in *Ford* to support her claim. *See Ford v. State*, 158 S.W.3d 488, 492–93 (Tex.Crim.App.2005).

In *Ford*, the court determined that a trooper's statement that he believed the defendant was "following too closely," without more specific, articulable facts, was insufficient to establish reasonable suspicion. *Id.* Because the trial court was provided only with the conclusory statement that Ford violated the law, the court determined there was no way of assessing whether the conclusory opinion was "objectively reasonable." *Id.* In *Castro*, the court further explained when a conclusory statement will suffice for establishing reasonable suspicion. *Castro v. State*, 227 S.W.3d 737, 742 (Tex.Crim.App. 2007). When reasonable suspicion is based on an objective observation or fact such as whether a defendant used his turn signal, a conclusory statement may suffice for determining reasonable suspicion. *See id.* In dicta, the court stated that "being intoxicated" can be an example of a subjective determination that must be accompanied by specific and articulable facts to establish reasonable suspicion. *See id.*

Absent any context, Williams' statement that Nacu was "too intoxicated to drive" is conclusory. However, Williams' explanation that the driver of a vehicle had previously been in her restaurant, was intoxicated, and trying to drive through metal poles too narrow to accommodate a car, gave Hoffman specific, articulable facts that would allow a reviewing court to determine whether Nacu's detention was objectively reasonable. *See Derichsweiler*, 348 S.W.3d at 917; *Castro*, 227 S.W.3d at 742; *Ford*, 158 S.W.3d at 493.

Moreover, Nacu's narrow interpretation of *Ford* does not comport with the court of criminal appeals' holding in *Derichsweiler*. In *Derichsweiler*, an informant testified at the suppression hearing and stated that the defendant pulled up beside her and her husband at a restaurant drive-through and "[j]ust kind of grinn[ed]" at them. *Derichsweiler*, 348 S.W.3d at 909–10 (first alteration in original), *cert. denied*, —— U.S. ——, 132 S.Ct. 150, 181 L.Ed.2d 67 (2011). The defendant lingered beside them for less than a minute and drove around the lot. *Id.* The driver repeated this behavior two more times, drove off, and pulled up to at least two other vehicles in a nearby lot. *Id.* The couple dialed 911 and reported this behavior. *Id.* The court determined that the reliable informants' tip to the 911–dispatcher describing the defendant's "bizarre" and "scrutinizing" behavior was sufficient for establishing reasonable suspicion. *Id.* at 917.

What sets *Derichsweiler's* facts and the facts underlying Nacu's detention apart from those in *Ford* are the specific and articulable facts provided by the detaining officers to support the witnesses' conclusory statements. In *Ford*, the only testimony offered to support a finding of reasonable suspicion was that the suspect was following too closely. *Ford*, 158 S.W.3d at 493. In *Derichsweiler*, the specific and articulable facts testified to were that a suspicious driver was grinning and staring at parked motorists, the driver repeated this behavior, and that it was directed toward at least three different parked vehicles. *See Derichsweiler*, 348 S.W.3d at 909–10. Here, it is arguable that the testimony offered by Hoffman provided the trial court with more specific and articulate facts that Nacu was engaged in criminal activity than did the detaining officer in *Derichsweiler*. *Compare id.* at 917. Additionally, the difference in experience levels between Officer Hoffman (seventeen years) and the detaining officer in *Derichsweiler* (less than a year) further supports a determination that the detention of Nacu was objectively more reasonable

than that of *Derichsweiler. Id.* at 910; *see also Davis v. State,* 829 S.W.2d 218, 220 (Tex.Crim.App.1992) ("In justifying a stop, the police officer can make rational inferences from the articulable facts based upon the officer's personal knowledge and experience.").

We also note that the underlying facts and legal principles surrounding Nacu's detention are distinguishable from those in *Torres. See Torres v. State,* 182 S.W.3d 899, 900–03 (Tex.Crim.App.2005). After Torres crashed his vehicle into a homeowner's porch, two sheriff's deputies were the first on the scene to investigate the accident. *Id.* The deputies called a state trooper to investigate the accident. *Id.* The deputies explained to the trooper "only that they believed that appellant was intoxicated," and left the scene. *Id.* The trooper questioned Torres but did not ask him if he had been drinking. *Id.* After seeing Torres favor one arm, the trooper arrested him without performing field sobriety tests. *Id.* The court held that the deputies' unexplained opinions that Torres was intoxicated were not sufficient for establishing probable cause. *Id.* at 903. Notably, the court in *Torres* was concerned with probable cause, *see id.* at 901, a standard that is more exacting than the standard for determining reasonable suspicion, *see Derichsweiler,* 348 S.W.3d at 916; *accord Alabama v. White,* 496 U.S. 325, 330, 110 S.Ct. 2412, 110 L.Ed.2d 301 (1990). Additionally, the arresting officer did not give any specific and articulable facts that supported a determination that Torres was intoxicated. *See Torres,* 182 S.W.3d at 903. As discussed above, Officer Hoffman supplied the court with numerous specific and articulable facts that supported the trial court's determination that Hoffman had reasonable suspicion to detain Nacu.

Because Williams' reliable, conclusory statement was supplemented with objective, specific, and articulable facts that were corroborated by Officer Hoffman, the trial court did not err in denying Nacu's motion to suppress.

## CONCLUSION

For the reasons stated above, the trial court did not err in denying Nacu's motion to suppress evidence. Accordingly, we affirm the trial court's judgment.

Concurring Opinion by: Steven C. Hilbig, Justice.

STEVEN C. HILBIG, Justice, concurring.

Although I agree with the result reached by the majority, I disagree with its analysis of Nacu's complaint about the informant's use of conclusory language. Accordingly, I concur only in the judgment.

Relying largely on *Ford v. State,* 158 S.W.3d 488 (Tex.Crim.App.2005), Nacu argues the trial court erred in denying her motion to suppress. Nacu asserts that *Ford* stands for the proposition that an arresting officer who merely testifies about his conclusions regarding a defendant's conduct fails to provide articulable facts to support an investigative detention. Nacu reasons that if an officer's conclusory testimony is insufficient, then a citizen's conclusory report of a crime to a police officer does not supply the officer with articulable facts to support a detention. The majority appears to accept this construct and attempts to point out why the witness Williams's admittedly conclusory statements to Officer Hoffman are sufficient to support the detention. I believe both the majority and Nacu misapply *Ford* and the Court of Criminal Appeals's reasoning in that case.

I read the thrust of the court's opinion in *Ford* to be whether the trial court fulfilled its obligation to make an independent determination as to reasonable suspicion based on the quality of the evidence provided to the trial court. That is, *Ford* discusses whether the trial court heard sufficient testimony to make an *independent* determination that the investigating officer had specific and articulable facts to support a detention rather than relying solely upon an officer's conclusions. *Ford* does not address the "quality" of information an informant gives to an officer when reporting a possible crime.

Ford challenged the investigative detention that led to his arrest for possession of marijuana. *Id.* at 490–491. During the hearing on the motion to suppress, the arresting officer testified he stopped Ford's car for "following too close" to another vehicle, allegedly in violation of section 545.062(a) of the Texas Transportation Code. *Id.* The arresting officer provided no details as to why he concluded Ford was violating the statute. The trial court denied the motion to suppress, and the court of appeals affirmed. *Ford v. State,* No. 01–02–00643–CR, 2003 WL 22310499 (Tex.App.-Houston [1st Dist.] Oct. 9, 2003), *reversed,* 158 S.W.3d 488 (Tex.Crim.App. 2005). The Court of Criminal Appeals reversed, holding the trial court erred in denying the motion. *Ford,* 158 S.W.3d at 494. The court noted that:

> The record reveals an absence of any facts allowing an appellate court to determine the circumstances upon which Peavy could reasonably conclude that Ford actually was, had been, or soon would have been engaged in criminal activity. Instead, the trial court was presented only with a conclusory statement that Ford was violating a traffic law. We do not quarrel with the notion that Peavy may have in fact believed that Ford was following another car too

closely. Nor do we dispute that the trial judge is free to believe or disbelieve Peavy's testimony. But without specific, articulable facts, a court has no means in assessing whether this opinion was objectively reasonable.

*Id.* at 493 (footnotes omitted). The court went on to state:

> When a trial court is not presented with such facts, the detention cannot be "subjected to the more detached, neutral scrutiny of a judge who must evaluate the reasonableness of a particular search or seizure in light of the particular circumstances." And "[w]hen such a stop is not based on objective criteria, the risk of arbitrary and abusive police practices exceeds tolerable limits." Allowing a police officer's opinion to suffice in specific facts' stead eviscerates *Terry's* reasonable suspicion protection. If this Court were to hold as the dissent suggests, we would be removing the "reasonable" from reasonable suspicion. Therefore, we adhere to the principle that specific, articulable facts are required to provide a basis for finding reasonable suspicion. Mere opinions are ineffective substitutes for specific, articulable facts in a reasonable-suspicion analysis.

*Id.* (footnotes omitted). By this passage, I understand the court to focus on the requirement that the trial court must make an independent determination, based on the evidence, of the existence of reasonable suspicion. The court cannot rely solely on an officer's conclusory statement that a person violated a statute. So Nacu is correct to a point. A police officer's testimony that a person was "intoxicated," without explaining the basis for his conclusion, e.g. the presence of bloodshot eyes, slurred speech, unsteadiness, smell of alcohol, etc., would not be sufficient to pass constitu-

tional muster—not because intoxication would be insufficient to support a finding of reasonable suspicion, but because the trial court could not exercise its duty to make an independent determination based solely on the conclusory testimony. However, whether a police officer acts upon specific, articulable facts when performing an investigative detention is a different question.

The majority concludes, and I agree, the information provided by the manager was reliable. *See, e.g. U.S. v. Burbridge,* 252 F.3d 775, 778 (5th Cir.2001) ("An ordinary citizen's eyewitness account of criminal activity and identification of a perpetrator is normally sufficient to supply probable cause to stop the suspect."); *Cornejo v. State,* 917 S.W.2d 480, 483 (Tex.App.-Houston [14th Dist.] 1996, pet. ref'd) ("When police receive information from a private citizen whose only contact with police is a result of having witnessed a criminal act committed by another, the credibility and reliability of the information is inherent.") Therefore, the inquiry becomes whether it was reasonable for the officer to act upon reliable information that a particular person was about to or was committing a crime. When the witness reported to Officer Hoffman that Nacu was intoxicated, the witness pointed to Nacu and the car she was driving, and the officer observed Nacu driving in a public place, it was reasonable for the officer to conclude under the totality of the circumstances that Nacu was committing the crime of driving while intoxicated. However, Nacu argues the investigative detention was not reasonable because the reliable citizen informant failed to provide sufficient details to the officer as to how the citizen informant came to the conclusion that Nacu was intoxicated. This is simply a "back-door" attempt to attack the reliability of the information provided by the citizen informant and has nothing to do with the concern expressed by the Court of Criminal Appeals in *Ford* that the trial court make an independent determination of reasonable suspicion. Simply put, is it reasonable under our state and federal constitutions to predicate an investigative detention upon a conclusory report by an otherwise reliable citizen informant that a crime is being committed or is about to be committed? The answer is clearly "yes."

The officer's testimony about the information he received from the informant contained specific, articulable facts upon which the officer based the detention. The officer's testimony provided the trial court a sufficient basis to independently evaluate the reasonableness of the officer's conduct in detaining Nacu. The trial court did not err in finding it was reasonable for Officer Hoffman to act on information regarding a crime provided him by the citizen-informant. The fact that Williams told the officer that Nacu was intoxicated, without providing details as to why she concluded Nacu was intoxicated, does not lessen the reasonableness of Officer's Hoffman's actions. *Ford* is inapplicable to these facts, and I therefore concur in the majority's judgment.