

# Fourth Court of Appeals
## San Antonio, Texas

## MEMORANDUM OPINION

No. 04-15-00656-CR

The **STATE** of Texas,
Appellant

v.

Gwen **JENNINGS**,
Appellee

From the County Court at Law, Kerr County, Texas
Trial Court No. CR141129
Honorable Susan Harris, Judge Presiding

Opinion by:     Karen Angelini, Justice

Sitting:        Karen Angelini, Justice
                Rebeca C. Martinez, Justice
                Patricia O. Alvarez, Justice

Delivered and Filed:  June 22, 2016

AFFIRMED

The State of Texas appeals the trial court's order granting a motion to suppress filed by

Gwen Jennings.  The State contends the trial court erred by: (1) concluding Jennings was detained

based on the officer's testimony that he "stopped" Jennings; and (2) finding the officer lacked

reasonable suspicion to detain Jennings.  We affirm the trial court's order.

### BACKGROUND

At the hearing on the motion to suppress, Officer Anthony Bondanza testified he was

advised by dispatch that a 911 caller reported two females were at the Hilltop Village Nursing

Home and appeared to be intoxicated. The caller provided a description and license plate number of the vehicle in which the females had driven away. The vehicle was described as a white Toyota minivan. The dispatcher advised Officer Bondanza that the caller had been identified and the caller's work phone number was obtained. Officer Bondanza also recalled the dispatcher advising him the females were being loud in the hallways of the nursing home and had been asked to leave due to the disturbance they were causing.

Officer Bondanza testified the nursing home is at the end of a long street which ends at Harper Road. Within minutes, Officer Bondanza located the vehicle matching the description with the same license plate number and followed the minivan as it turned onto two different streets and then parked in a driveway. Officer Bondanza testified he did not observe any traffic violations nor did he observe the driver having any problems driving the vehicle. Officer Bondanza's report, which was admitted into evidence, stated he "pulled into the driveway, just behind the suspect vehicle and began to advise dispatch [he] was conducting a traffic stop." Jennings exited her vehicle and began walking towards Officer Bondanza. Field sobriety tests were conducted, and Jennings was arrested.

After Jennings was transported to jail, Officer Bondanza obtained written statements from Kathy Lestourgeon and Kay Neal which also were admitted into evidence. In addition, Lestourgeon and Peggy Green testified at the hearing on the motion to suppress. Neal did not testify.

Lestourgeon testified she observed Jennings and her sister arrive at the nursing home where their mother was a resident. She stated both women were intoxicated. Lestourgeon further stated she smelled alcohol and observed both Jennings and her sister were stumbling. Lestourgeon testified she summoned Peggy Green, a supervisor, because Jennings and her sister were trying to leave the facility with their mother. Lestourgeon then described following Jennings and her sister

out of the nursing home and obtaining a description and the license plate number of the vehicle in which they left. Lestourgeon admitted that she did not mention smelling alcohol or that Jennings was stumbling in her written statement. Lestourgeon explained that, in her written statement, she was more focused on Jennings's sister because she was being very loud. Further, in her written statement, Lestourgeon stated, "[Jennings] had to repeatedly ask [her sister] to be quiet as she was making comments about having to leave." Although Lestourgeon testified she spoke with Jennings, Lestourgeon also did not mention any conversation with Jennings in her written statement.

Peggy Green testified Lestourgeon summoned her because a resident's family members appeared to be intoxicated and were trying to take their mother out of the facility. Green testified she asked Neal to call 911 and report that family members who appeared to be under the influence were leaving the facility in a car.

In Neal's statement, she stated Green instructed her to call 911 and report two visitors at the facility appeared to be intoxicated and were asked to leave the facility. After Lestourgeon provided Neal with the description and the license plate number of the vehicle in which the visitors left, Neal called 911 a second time and provided that information to the dispatcher.

After hearing the foregoing evidence, the trial court granted the motion to suppress. In its findings of fact and conclusions of law, the trial court found Officer Bondanza's information came exclusively from the dispatcher who informed him "that the 911 caller reported one or two females in the hallways, possibly intoxicated and heading out to their vehicles. The caller gave a description and license plate number of the vehicle that the females got into." The trial court further found:

> Upon cross examination by defense counsel, Officer Bondanza admitted he had no facts indicating that the Defendant was driving while intoxicated prior to

stopping the Defendant. All Officer Bondanza had prior to the stop was a report through dispatch from a non-eyewitness that two females were intoxicated.

The trial court concluded Neal never saw Jennings on the date in question and was not an eyewitness with personal knowledge. The trial court further concluded:

> Officer Bondanza received no specific, articulable facts in which to form a reasonable suspicion that the Defendant was driving while intoxicated. Officer Bondanza merely received the conclusory statement that Defendant was or may be intoxicated from dispatch. …. The officer was unable to corroborate the conclusory state[ment] that the Defendant was driving while intoxicated. In fact, Officer Bondanza answered honestly that he was attempting to develop his own probable cause [while he was following Jennings]. Corroboration of such identifying information as the type of vehicle, location, and direction of travel does not provide the requisite corroboration for the stop.

Finally, the trial court concluded Officer Bondanza did not have reasonable suspicion to detain Jennings. The State appeals.

### STANDARD OF REVIEW

In evaluating a trial court's ruling on a motion to suppress, we apply a bifurcated standard of review. *Ford v. State*, 158 S.W.3d 488, 493 (Tex. Crim. App. 2005). "We give almost total deference to the trial court's determination of historical facts and review de novo the trial court's application of law to facts not turning on credibility and demeanor." *Id*.

### DETENTION V. CONSENSUAL ENCOUNTER

In two issues in its brief, the State contends the trial court erred in accepting Officer Bondanza's testimony that he "stopped" Jennings and in concluding from this testimony that Jennings was detained. Jennings responds the State did not contend Officer Bondanza had not detained her in its argument before the trial court and the evidence establishes she was detained.

Assuming this issue is properly preserved, Officer Bondanza's report stated he "pulled into the driveway, just behind the suspect vehicle." From this description, the trial court could infer that Officer Bondanza "boxed in" Jennings's vehicle. "Most courts have held that when an officer

'boxes in' a car to prevent its voluntary departure, this conduct constitutes a Fourth Amendment seizure" or detention. *State v. Garcia-Cantu*, 253 S.W.3d 236, 246 n.44 (Tex. Crim. App. 2008). Accordingly, we agree with the trial court that Jennings was detained when Officer Bondanza boxed her car in her driveway.

**REASONABLE SUSPICION**

The State also contends the trial court erred in concluding Officer Bondanza lacked reasonable suspicion to detain Jennings.

The Fourth Amendment permits an officer to conduct a brief investigative stop when the officer has reasonable suspicion that a person is violating the law. *See Navarette v. California*, 134 S. Ct. 1683, 1687 (2014); *Ford*, 158 S.W.3d at 492. Reasonable suspicion exists if an officer has specific, articulable facts that, when combined with rational inferences from those facts, would lead him to reasonably conclude that a particular person actually is, has been, or soon will be engaged in criminal activity. *Ford*, 158 S.W.3d at 492. "The 'reasonable suspicion' necessary to justify such a stop 'is dependant upon both the content of the information possessed by police and its degree of reliability.'" *Navarette*, 134 S. Ct. at 1687 (quoting *Alabama v. White*, 496 U.S. 325, 330 (1990)). The standard looks "solely to whether an objective basis for the stop exists" and considers the totality of the circumstances. *Ford*, 158 S.W.3d at 492-93.

In its brief, the State relies on case law allowing officers to form reasonable suspicion on facts supplied by a citizen-eyewitness, which the officer adequately corroborates. *See Brother v. State*, 166 S.W.3d 255, 259 (Tex. Crim. App. 2005). As Jennings points out in her brief, however, the trial court found Neal was not an eyewitness. The State also contends Officer Bondanza could rely on the information known to the dispatcher because "the cumulative information known to the cooperating officers at the time of the stop is to be considered," and "[a] 911 police dispatcher is ordinarily regarded as a 'cooperating officer' for [this] purpose." *Derichsweiler v. State*, 348

S.W.3d 906, 914 (Tex. Crim. App. 2011). In this case, however, the dispatcher did not testify at the hearing, and the 911 recordings were not admitted into evidence. Therefore, the only evidence of the information known to the dispatcher is Neal's written statement in which she stated she was instructed to call 911 and report two visitors were at the nursing home who appeared to be intoxicated and left the facility in a vehicle of a particular description with a particular license plate number.

In her brief, Jennings relies on *Ford v. State*, in which the Texas Court of Criminal Appeals considered whether a trooper's testimony that he stopped the driver of a vehicle because it was "following too close" behind another vehicle supported the trial court's finding of reasonable suspicion. 158 S.W.3d at 493. Because "the trial court was presented only with a conclusory statement that [the defendant] was violating a traffic law," the court held the evidence did not contain specific, articulable facts necessary for the court to assess whether the trooper's opinion was objectively reasonable. *Id*. Jennings argues the trial court properly concluded the information provided to Officer Bondanza by dispatch that the females in the described vehicle were "intoxicated" was equally conclusory and could not support a finding of reasonable suspicion.

Our holding in this case is governed by this court's opinion in *Nacu v. State*, 373 S.W.3d 691 (Tex. App.—San Antonio 2012, no pet.). In that case, the manager of a restaurant, Peggi Ann Williams, observed an intoxicated customer, Susan Marie Nacu, disturbing other customers after the restaurant's employees refused to serve Nacu any further alcohol. *Nacu*, 373 S.W.3d at 692-93. When a customer informed Williams that Nacu was leaving in her car, Williams grabbed a cordless phone and ran outside where she observed a police car in an adjacent parking lot. *Id*. at 693. Williams tapped on Officer Steven Hoffman's window and told him that a "woman had been in my restaurant, I noticed her to be intoxicated and she had gotten in a car." *Id*. Officer Hoffman asked, "Which woman?" and Williams pointed to Nacu's car and stated, "that vehicle trying to

drive between the two metal poles." *Id*. Williams testified the two poles were not wide enough to allow Nacu's vehicle to pass, and she almost hit the poles. *Id*. Officer Hoffman immediately spotted Nacu's vehicle and followed her a short distance to another parking lot where Nacu stopped. *Id*. Officer Hoffman parked behind Nacu's vehicle and ultimately arrested her for driving while intoxicated. *Id*. Officer Hoffman testified he did not personally observe Nacu commit any traffic violation, and the sole basis for his traffic stop was Williams's unsolicited statement that Nacu "was too intoxicated to drive." *Id*. The trial court denied the motion to suppress. *Id*.

On appeal, this court divided its analysis into three sections: reliability, corroboration, and conclusory statements. *Id*. at 694-697. With regard to reliability, this court treated Williams as an anonymous citizen informant because she had not identified herself by name to Officer Hoffman. *Id*. at 694. After evaluating the four factors applicable in determining the reliability of an anonymous citizen's information, this court concluded Williams's information was reliable. *Id*. at 694-95. With regard to corroboration, this court held Officer Hoffman corroborated sufficient facts, reasoning:

> Considering the totality of the circumstances, Officer Hoffman's seventeen years of police experience, and the reliability of Williams' information, we hold Officer Hoffman corroborated enough facts to justify a temporary detention of Nacu. Williams ran into a parking lot while holding a cordless indoor-phone. She obtained Officer Hoffman's attention by tapping on his police car's window. She explained that she was the manager of a restaurant, a customer became intoxicated at her restaurant, and now the customer was attempting to drive away. There was a restaurant in the vicinity of Hoffman's patrol car. Williams identified the intoxicated customer by pointing to the customer's vehicle and describing it as the one that was trying to get through two metal poles. The metal poles were too narrow to allow passage of Nacu's vehicle, and Nacu almost ran into them. Hoffman testified that Williams appeared trustworthy. Because of the immediacy and danger that intoxicated drivers pose to the public, Hoffman pursued Nacu without obtaining further identifying information from Williams.

*Id*. at 695 (internal citations omitted). Finally, with regard to the conclusory nature of Williams's statement, this court noted the holding in *Ford* and also cited a subsequent decision by the Texas

Court of Criminal Appeals which "further explained when a conclusory statement will suffice for establishing reasonable suspicion." *Id*. at 696 (citing *Castro v. State*, 227 S.W.3d 737, 742 (Tex. Crim. App. 2007)). Citing *Castro*, this court noted, "When reasonable suspicion is based on an objective observation or fact such as whether a defendant used his turn signal, a conclusory statement may suffice for determining reasonable suspicion." *Id*. This court further noted, however, that the *Castro* court stated in dicta "that 'being intoxicated' can be an example of a subjective determination that must be accompanied by specific and articulable facts to establish reasonable suspicion." *Id*. This court then reasoned:

> Absent any context, Williams' statement that Nacu was "too intoxicated to drive" is conclusory. However, Williams' explanation that the driver of a vehicle had previously been in her restaurant, was intoxicated, and trying to drive through metal poles too narrow to accommodate a car, gave Hoffman specific, articulable facts that would allow a reviewing court to determine whether Nacu's detention was objectively reasonable.

*Id*.

Our analysis of the conclusory nature of the statement in *Nacu* controls the outcome of this case. Unlike the evidence in *Nacu*, the dispatcher's report of Neal's statement did not provide any context for the statement. And, because we hold the statement that the females were "intoxicated" is a subjective opinion, the opinion was required to be supported by specific, articulable facts. *See Castro*, 227 S.W.3d at 742. Because Officer Bondanza did not have any specific, articulable facts to support the opinion, the dispatcher did not testify and, therefore, did not provide evidence of any specific, articulable facts, and the 911 recordings, which may or may not have contained specific, articulable facts, were not admitted into evidence,[1] we hold the trial court properly concluded Officer Bondanza did not have reasonable suspicion to detain Jennings.

---

[1] Because Officer Bondanza testified he also knew the females had caused a disturbance in the hallway at the nursing home which was not expressly referenced in Neal's written statement but Neal did state "I spoke with the dispatcher and described the situation," we note the recordings may have contained additional facts.

**CONCLUSION**

The trial court's order is affirmed.

Karen Angelini, Justice

DO NOT PUBLISH