

# NUMBER 13-19-00488-CR

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

ALLISON RIEPE BOYKIN,                                                     Appellant,

v.

THE STATE OF TEXAS,                                                       Appellee.

### On appeal from the 451st District Court
### of Kendall County, Texas.

# MEMORANDUM OPINION

### Before Justices Benavides, Hinojosa, and Silva
### Memorandum Opinion by Justice Benavides

Appellant Allison Riepe Boykin was charged with driving while intoxicated, third or more, a third-degree felony. *See* TEX. PENAL CODE ANN. § 49.09(b). Boykin challenges the trial court's denial of her motion to suppress by arguing that the statement from her husband that she was "drunk" did not provide reasonable suspicion for the stop of her vehicle. We affirm.

# I. BACKGROUND[1]

Boykin was charged with driving while intoxicated, third or more, on August 17, 2018. She filed a motion to suppress and at the hearing for her motion, Boykin stated that she was only challenging the reasonable suspicion of the stop.

The State called Nathan Taylor, the communications manager who was in charge of the 911 dispatch for the City of Boerne Police Department. Taylor testified that the 911 dispatch received two 911 calls on August 17, 2018, from a caller who identified himself as Clinton Boykin. Taylor explained that the 911 operator entered the information he received into notes, and from there, the notes were sent out to dispatch. Taylor agreed on cross-examination that there was no way the 911 operator could verify the veracity of the information being called in and that police officers are dispatched to make determinations of reliability.

The 911 calls were played for the trial court and admitted into evidence. In the first call, Clinton stated that he and Boykin had gotten into a verbal argument and "pretty much she was drunk and took off in her car." Clinton stated Boykin was driving a 2015 white Dodge Durango and intending to go to her mother's house, but Clinton doubted she would go to her mother's house because Boykin would be "chewed out" for driving drunk. Clinton stated Boykin was probably just "driving around" and went to purchase more alcohol. Shortly after the first call, Clinton called again to update the 911 dispatch of Boykin's

---

[1] This case is before this Court on transfer from the Fourth Court of Appeals in San Antonio pursuant to a docket equalization order issued by the Supreme Court of Texas. *See* TEX. GOV'T CODE ANN. § 73.001.

location as she drove past the house, listing nearby streets.

Detective Lisa Flores Rowe of the Boerne Police Department located Boykin's vehicle after receiving the dispatch report. She testified that dispatch advised there was a verbal disturbance, that the wife left after drinking and was possibly intoxicated, and that the husband provided a description of the vehicle and license plate number. As she drove looking for the vehicle, Detective Rowe noticed Boykin at a stop light. She stated that once the light turned green and Boykin proceeded through the light, Boykin appeared to be driving under the speed limit. Detective Rowe activated her overhead lights and stated she felt that Boykin did not immediately stop her vehicle. She stated that based on her knowledge at the time plus her observations, Detective Rowe believed she had reasonable suspicion to stop Boykin for a possible driving while intoxicated. On cross-examination, Detective Rowe stated she relied on the facts from dispatch and had "reason to believe" the caller's information because Clinton was Boykin's husband. She stated that knowing there were ongoing "issues" between the parties would not have changed her opinion of the caller's reliability. Detective Rowe agreed that Boykin did not break any traffic laws but Boykin was pulled over because of the call dispatch received.[2] However, Detective Rowe explained she verifies the information in 911 calls by investigating the situation, which she did in this instance. Detective Rowe also agreed that she could not pull someone over without a reason to make contact, but an uncorroborated statement is

---

[2] Boykin played the dash camera videos from both Detective Rowe and Sergeant Greg Irvin's patrol cars but neither video was admitted into evidence; therefore, those videos are not available for this Court to review.

enough to make contact depending on what is contained in the statement.

Boykin called Sergeant Greg Irvin from the Boerne Police Department as a witness. Sergeant Irvin stated he went to Clinton's location and made contact with him. Clinton explained that Boykin was not allowed in the house if she had been drinking and that the Boykins had a "contract" to that effect. Sergeant Irvin was at the home when Boykin drove by and felt that based on what was known at the time, there was sufficient evidence to pull Boykin over and investigate further. Sergeant Irvin also stated that gathering Boykin or Clinton's previous history would not have mattered if the current information the officers had was corroborated.

The trial court denied Boykin's motion to suppress. Following the denial of her suppression, Boykin pleaded guilty and the trial court sentenced her to ten years' imprisonment in the Texas Department of Criminal Justice–Institutional Division, probated for four years, and assessed a fine and other conditions of probation. This appeal followed.

## II. MOTION TO SUPPRESS

By her sole issue, Boykin argues the trial court erred by finding there was reasonable suspicion to stop her.

### A. Standard of Review

A bifurcated standard applies when we review a trial court's ruling on a motion to suppress. *Lerma v. State*, 543 S.W.3d 184, 189–90 (Tex. Crim. App. 2018); *Medrano v. State*, 579 S.W.3d 499, 502 (Tex. App.—San Antonio 2019, pet. ref'd). The trial court is

the sole trier of fact and judge of the credibility of the witnesses and the weight to be given to their testimony. *Lerma*, 543 S.W.3d at 190. Therefore, we afford almost complete deference to the trial court in determining historical facts. *Id.* However, we review de novo whether the facts are sufficient to give rise to reasonable suspicion in a case. *Id.*

When a trial court does not make explicit findings of fact, as in the case before us, we view the evidence in the light most favorable to the trial court's ruling and assume the trial court made implicit findings of fact supported by the record. *Id.* We will sustain the ruling of the trial court if it is correct under any applicable theory of law. *Id.*

## B.    Applicable Law and Discussion

Under the Fourth Amendment, a warrantless detention of the person that amounts to less than a full-blown custodial arrest must be justified by a reasonable suspicion. *Derichsweiler v. State*, 348 S.W.3d 906, 914 (Tex. Crim. App. 2011); *see United States v. Sokolow*, 490 U.S. 1 (1989) ("[P]olice can stop and briefly detain a person for investigative purposes if the officer has a reasonable suspicion supported by articulable facts that criminal activity may be afoot, even if the officer lacks probable cause.") (quoting *Terry v. Ohio*, 392 U.S. 1, 30 (1968)). "'Reasonable suspicion exists if the officer has specific articulable facts that, when combined with rational inferences from those facts, would lead him to reasonably believe that the person has engaged or is (or soon will be) engaged in criminal activity.'" *State v. Cortez*, 543 S.W.3d 198, 204 (Tex. Crim. App. 2018) (quoting *Jaganathan v. State*, 479 S.W.3d 244, 247 (Tex. Crim. App. 2015)); *see Terry*, 392 U.S. at 30. These articulable facts must amount to more than a mere hunch or

suspicion. *Abney v. State*, 394 S.W.3d 542, 548 (Tex. Crim. App. 2013). The totality of the circumstances is considered when making a reasonable suspicion determination, and the standard is an objective one. *Martinez v. State*, 348 S.W.3d 919, 923 (Tex. Crim. App. 2011); *Nacu v. State*, 373 S.W.3d 691, 694 (Tex. App.—San Antonio 2012, no pet.).

The factual basis for stopping a vehicle need not arise from the officer's personal observations but may be supplied by information acquired from another person. *Brother v. State*, 166 S.W.3d 255, 257 (Tex. Crim. App. 2005). "It has been widely recognized that the reliability of a citizen-informant is generally shown by the very nature of the circumstances under which the incriminating information became known to him or her." *Id.* at 258. "A citizen's tip may justify the initiation of a stop if the tip contains 'sufficient indicia of reliability.'" *Arizpe v. State*, 308 S.W.3d 89, 92 (Tex. App.—San Antonio 2010, no pet.) (quoting *Florida v. J.L.*, 529 U.S. 266, 270 (2000)). Federal courts and Texas courts have "consistently held that a stop based on facts supplied by a citizen-eyewitness, which are adequately corroborated by the arresting officer, do not run afoul of the Fourth Amendment." *Brother*, 166 S.W.3d at 259. "To require officers who are apprised of detailed facts from citizen-eyewitnesses to observe suspects and wait until additional suspicious acts are committed would be foolish and contrary to the balance struck in *Terry* and its progeny." *Id.*; *see Terry*, 392 U.S. at 29.

The information relayed to Detective Rowe by dispatch was coming from Clinton, Boykin's husband, who explained he was with Boykin and they had a verbal argument before she left in her vehicle. "When determining an informant's reliability, courts

6

distinguish between anonymous 911–callers and unidentified informants who give unsolicited information to officers in a face-to-face manner." *Nacu*, 373 S.W.3d at 694. "The face-to-face informant is inherently more reliable than the anonymous 911–caller because the face-to-face informant places himself in a position to be held responsible for his intervention." *Id*. Here, the informant was Boykin's husband who readily identified himself and made himself available for officers to come speak with him at his residence. Therefore, we conclude that the information Detective Rowe obtained from Clinton contained "sufficient indicia of reliability." *See J.L.*, 529 U.S. at 270.

Having determined the information was reliable, we must determine "whether the totality of that reliable information provided specific, articulable facts that, combined with reasonable inferences to be derived from those facts, would lead to the reasonable conclusion that the appellant was committing . . . some type of criminal activity." *Derichsweiler*, 348 S.W.3d at 915–16; *Nacu*, 373 S.W.3d at 695. "Before detaining a suspect, an officer must corroborate the facts supplied by a citizen-eyewitness." *Brother*, 166 S.W.3d at 259 n. 5; *Nacu*, 373 S.W.3d at 695. Corroboration does not require the officer to personally observe criminal conduct; "[r]ather, corroboration refers to whether the police officer, in light of the circumstances, confirms enough facts to reasonably conclude that the information given to him is reliable and a temporary detention is justified." *Brother*, 166 S.W.3d at 259 n. 5; *Nacu*, 373 S.W.3d at 695.

Although the San Antonio court held that a solitary statement that the defendant was "too intoxicated to drive" is too conclusory without more, here, Clinton's relationship

to Boykin, as well as the specific details he provided to the dispatcher combined with the observations made by Detective Rowe, justified Detective Rowe's stop of Boykin's vehicle. *See id.* at 696 (stating that although "Williams' statement that Nacu was 'too intoxicated to drive' is conclusory" . . . the additional "specific, articulable facts" relayed by Williams regarding her knowledge of Nacu "would allow a reviewing court to determine whether Nacu's detention was objectively reasonable."). Clinton stated he had been around Boykin, they had argued, "she was drunk," she had left the house in a vehicle, and she was possibly a threat to others. He also said that Boykin claimed she was headed to her mother's house, he gave dispatch Boykin's mother's address, and described the vehicle Boykin was driving as well the license plate number.[3] In his second call to 911, Clinton stated he had just seen Boykin drive past their home and what road she was near. Based on the information Clinton relayed, Detective Rowe testified that when she located Boykin, she was near the area Clinton had seen Boykin in. Detective Rowe stated she also felt that Boykin was driving at a speed under the speed limit and did not immediately stop the vehicle when Detective Rowe turned on her overhead lights, which lead her to believe Boykin could be intoxicated.

Considering the totality of the circumstances, Detective Rowe's police experience, and the reliability of the information provided by Clinton, we hold Detective Rowe had enough facts to justify a temporary detention of Boykin. *See Derichsweiler*, 348 S.W.3d

---

[3] Clinton also explained to the dispatch operator that Boykin had issues with drinking alcohol and she would get "chewed out" if she went to her mother's house because Boykin's mother had "just spent a lot of money on rehab and it is not working for her."

at 916. Therefore, the trial court did not err in denying Boykin's motion to suppress. *See Lerma*, 543 S.W.3d 190.

We overrule Boykin's sole issue.

### III. CONCLUSION

We affirm the trial court's ruling.

GINA M. BENAVIDES
Justice

Do not publish.
TEX. R. APP. P. 47.2(b).

Delivered and filed on the
15th day of April, 2021.