

# Fourth Court of Appeals
## San Antonio, Texas

## MEMORANDUM OPINION

No. 04-24-00331-CR

Oliver Eugene **EVANS**, Jr.,
Appellant

v.

The **STATE** of Texas,
Appellee

From the 365th Judicial District Court, Maverick County, Texas
Trial Court No. 23-04-08523-MCRAJA
Honorable Amado J. Abascal III, Judge Presiding

Opinion by:    Rebeca C. Martinez, Chief Justice

Sitting:    Rebeca C. Martinez, Chief Justice
Lori Massey Brissette, Justice
Adrian A. Spears II, Justice

Delivered and Filed: April 29, 2026

AFFIRMED AS MODIFIED

Appellant Oliver Eugene Evans, Jr., was convicted of one count of smuggling of persons with intent to obtain a pecuniary benefit under Texas Penal Code section 20.05(a)(1)(A).[1] Following a jury trial, Evans was convicted and sentenced to sixty-six months' imprisonment. In his first issue on appeal, Evans argues section 20.05(a)(1)(A) facially violates the First

---

[1] The judgment signed by the trial court recites that the jury found Evans guilty of smuggling with intent to obtain a pecuniary benefit but incorrectly cites the statute for this offense as Texas Penal Code section 20.05(a)(1)(C).

Amendment. In his second and third issues, Evans argues the statute is field and conflict preempted by federal law as applied to his prosecution. In his fourth issue, Evans argues the trial court erred in denying his motion to suppress. On March 16, 2026, Evans filed a motion for rehearing. We deny the motion for rehearing, *sua sponte* withdraw our March 4, 2026, opinion and judgment, and substitute this opinion and judgment in their stead. We affirm Evans's conviction, but *sua sponte* reform the trial court's judgment to conform with the jury's verdict.

### BACKGROUND

While conducting surveillance in Maverick County as part of Operation Lone Star, Department of Public Safety ("DPS") Special Agent Matthew Ruiz observed four individuals emerge from the brush adjacent to a shopping center parking lot and enter a mid-size sport-utility vehicle ("SUV"). Because the area where he observed the vehicle "loading up" was very active with illegal migrant crossings, Agent Ruiz, who was in an unmarked vehicle, requested that DPS Trooper Jesus Leanos conduct a traffic stop to investigate a potential human-smuggling incident. Based on Agent Ruiz's description of the vehicle and potential criminal activity, Trooper Leanos initiated the stop of Evans's vehicle. The SUV's tinted windows prevented Trooper Leanos from determining how many occupants were in the vehicle. The vehicle contained six occupants: Evans, who was the driver, a female in the front passenger seat, three individuals in the back passenger seat, and one other individual, later identified as Saul Canales Flores, who was eventually discovered in the cargo area of the SUV. Flores and two of the individuals in the back seat presented Trooper Leanos with Honduran identification cards and were later transferred to U.S. Border Patrol custody for an immigration determination. The other backseat passenger fled the scene and was never located. Evans told Trooper Leanos he was "picking up some friends for friends" and he was going to get three-hundred dollars for transporting these individuals.

Evans was arrested and later indicted for one count of smuggling of persons with intent to obtain a pecuniary gain under Texas Penal Code section 20.05(a)(1)(A). Prior to trial, Evans filed a motion to suppress arguing Trooper Leanos did not have reasonable suspicion to conduct a stop. The trial court denied the motion. Evans was convicted following a jury trial. After conviction, Evans filed a motion for new trial. The trial court denied Evans's motion and he timely appealed.

### STANDARDS OF REVIEW

In his first three issues on appeal, Evans argues that 20.05(a)(1)(A) facially violates the First Amendment of the United States Constitution and that the statute is field and conflict preempted by federal law as applied to his prosecution. We review Evans's constitutional challenges *de novo*. *See Tex. Mut. Ins. Co. v. PHI Air Med., LLC*, 610 S.W.3d 839, 846 (Tex. 2020); *Ex parte Lo*, 424 S.W.3d 10, 14 (Tex. Crim. App. 2013); *State v. Flores*, 679 S.W.3d 232, 243 (Tex. App.—San Antonio 2023, pet. ref'd).

Evans's fourth issue argues that the trial court erred in denying his motion to suppress. "In reviewing a trial court's ruling on a motion to suppress, appellate courts must view the evidence in the light most favorable to the trial court's ruling." *Johnson v. State*, 414 S.W.3d 184, 192 (Tex. Crim. App. 2013) (quoting *State v. Garcia-Cantu*, 253 S.W.3d 236, 241 (Tex. Crim. App. 2008)). In doing so, we apply a bifurcated standard under which we grant almost total deference, when supported by the record, to a trial judge's "determinations of historical facts and mixed questions of law and fact that rely on credibility" but review the ruling *de novo* "when mixed questions of law and fact do not depend on the evaluation of credibility and demeanor[.]" *Id.* (internal citations omitted). "When a trial court makes explicit fact findings, the appellate court determines whether the evidence (viewed in the light most favorable to the trial court's ruling) supports these fact findings." *Id.* (quoting *State v. Kelly*, 204 S.W.3d 808, 818 (Tex. Crim. App. 2006)). "The trial

court's findings of fact and conclusions of law are sufficient if they are 'recorded in some way, whether written out and filed by the trial court, or stated on the record at the hearing.'" *Id.* (quoting *State v. Cullen*, 195 S.W.3d 696, 699 (Tex. Crim. App. 2006)). We limit our review to the evidence introduced at the motion to suppress hearing. *See Arguellez v. State*, 409 S.W.3d 657, 662 (Tex. Crim. App. 2013).

### FIRST AMENDMENT

Evans, in his brief, argues that section 20.05(a)(1)(A) facially violates the First Amendment to the United States Constitution. From our review, the arguments in this case are substantively the same as those in *Roberts v. State*, in which this Court rejected a First Amendment facial challenge and concluded that any unconstitutional applications of section 20.05(a)(1)(A) are not substantial in comparison to the constitutional ones. No. 04-24-00485-CR, 2026 WL 290378, at *4 (Tex. App.—San Antonio Feb. 4, 2026, no pet. h). Accordingly, we overrule Evans's First Amendment facial challenge.

### AS-APPLIED PREEMPTION

In his second and third issues, Evans argues that section 20.05(a)(1)(A) is field and conflict preempted by federal law as applied to his prosecution.

**A. Applicable Law**

This court analyzed a similar as-applied field and conflict preemption challenge to section 20.05(a)(1)(A) in *Roberts*, 2026 WL 290378, at *5–9. As such, while we will address the facts specific to Evans's case for his as-applied challenge, the legal principles discussed in *Roberts* control our analysis here.

**B. Analysis**

As we stated in *Roberts*, "unlike the instances where courts have found state statutes to be field preempted, section 20.05(a)(1)(A) does not require prosecutors to prove a noncitizen's illegal presence in the United States." *Id*. at *7. Here, Evans's conviction did not turn on immigration status. The evidence presented at trial focused on his intent to conceal an individual from all law enforcement. DPS Agents saw four individuals, in groups of two, come out of the brush and get into an SUV. Evans's windows were tinted so dark that Trooper Leanos testified he could not see how many people were inside the vehicle. In fact, Trooper Leanos did not find Flores until he opened the trunk of the SUV. Further, when questioned about his relationship to the passengers, Evans stated that he was just "picking up some friends for friends." The State did not need to prove Flores had unlawful immigration status or that Evans knew his actual status. Therefore, because Evans was prosecuted under a neutral statute, and his conduct was criminal regardless of Flores's immigration status, we hold that Evans's prosecution was not as-applied field preempted. *See Id.* at *8; *Kansas v. Garcia*, 589 U.S. 191, 208–09 (2020); *State v. Flores*, 679 S.W.3d 232, 245 (Tex. App.—San Antonio 2023, pet. ref'd); *see also Gutierrez v. State*, 721 S.W.3d 639, 655 (Tex. App.—Corpus Christi–Edinburg 2025, pet. filed) (holding section 20.05(a)(1)(A) was not as-applied field preempted where the evidence showed Appellant "was not convicted merely because of the citizenship status of the back seat passengers, but because she intended to conceal those individuals from law enforcement").

As to Evans's third point of error, as we established in *Roberts,* "[w]ith an as-applied conflict preemption challenge, the application of the law must conflict with federal law's comprehensive immigration scheme or with the federal government's discretion over immigration-related prosecutions." 2026 WL 290378, at *9. As in *Roberts*, the evidence presented at Evans's

trial does not show that his prosecution interfered with federal law or federal discretion over immigration-related prosecutions. *Id.* From the evidence presented at trial, after Trooper Leanos arrested Evans, the passengers, who identified themselves with Honduran identification cards, were turned over to Border Patrol Agents. Further, nothing in the record suggests that federal prosecutors wanted to pursue federal charges against Evans. On this record, we hold that Evans's prosecution under section 20.05(a)(1)(A) was not as-applied conflict preempted. *See Id.*

## MOTION TO SUPPRESS

### A. Applicable Law

The Fourth Amendment to the United States Constitution guarantees protection against unreasonable searches and seizures, "and its protections extend to brief investigatory stops of persons or vehicles that fall short of traditional arrest." *United States v. Arvizu*, 534 U.S. 266, 273 (2002) (citations omitted). *See* U.S. CONST. amend. IV. Under the Fourth Amendment, an investigative detention must be justified by reasonable suspicion. *Derichsweiler v. State*, 348 S.W.3d 906, 914–15 (Tex. Crim. App. 2011). "Reasonable suspicion exists where the officer has specific, articulable facts that, when combined with rational inferences from those facts, would lead him to reasonably conclude that a particular person is, has been, or soon will be engaged in criminal activity." *Ford v. State*, 158 S.W.3d 488, 492 (Tex. Crim. App. 2005). When an officer gives a subjective or conclusory opinion, it must be supported by specific articulable facts. *Id*. at 493*; see also Nacu v. State*, 373 S.W.3d 691, 696 (Tex. App.—San Antonio 2012, no pet.). We look at the totality of the circumstances to determine whether the detaining officer has a "particularized and objective basis" for suspecting legal wrongdoing. *See Arvizu*, 534 U.S. at 276–77 (finding an arresting officer "was entitled to make an assessment of the situation in light of his specialized training and familiarity with the customs of the area's inhabitants.").

When a detaining officer acts upon *nothing other than* a request of another officer to apprehend, the question becomes whether the requesting officer had reasonable suspicion or probable cause. *State v. Jennings*, 958 S.W.2d 930, 933 (Tex. App.—Amarillo 1997, no pet.) (citing *Rance v. State*, 815 S.W.2d 622, 635 n.2 (Tex. Crim. App. 1991)). However, "the cumulative information known to the cooperating officers at the time of the stop is to be considered in determining whether reasonable suspicion exists." *Derichsweiler*, 348 S.W.3d at 914 (quoting *Hoag v. State*, 728 S.W.2d 375, 380 (Tex. Crim. App. 1987)).

## B. Evidence Presented at the Hearing

At the suppression hearing, the State called arresting officer Trooper Leanos. Trooper Leanos testified that Agent Ruiz called him, identified himself as an agent with the Texas DPS Criminal Investigation Division, and advised Trooper Leanos that "a vehicle was observed loading up with — or in the process of human smuggling on Highway 277 heading northbound." Further, according to Trooper Leanos:

> [Agent Ruiz] told me that he observed the vehicle that had loaded — it was located in a known human smuggling area and that the vehicle was heading northbound on 277 towards my direction. He told me he observed people jumping into the vehicle and the vehicle take off.

According to Trooper Leanos, Agent Ruiz also told him the passengers "were being smuggled" and "concealed." Defense counsel asked: "What's illegal about four people getting in a vehicle?" Trooper Leanos responded: "What's illegal? That area is known for human smuggling. We have a cooperation called Operation Loan [sic] Star, and that area specifically was known for human smuggling[.]" Trooper Leanos also testified: "I had reasonable suspicion [to stop the vehicle] based on the fact that the agent called me and stated to me that he had observed the vehicle load up with people, and it had sped away from the scene." Additionally, Trooper Leanos testified that Agent Ruiz provided him with a description of the make, model, color, and license plate number

of the vehicle, and that when Trooper Leanos located the vehicle stopped at a traffic light, the tinted windows prevented him from seeing inside or determining how many passengers were in the vehicle. Agent Ruiz did not testify at the hearing.

**C. Analysis**

Evans argues that we must rule in his favor because (1) four people getting into a car is, on its own, not suspicious or an indication of criminal activity, and (2) being in a "high crime" area alone may not serve as the basis for a stop. Evans contends that the Court of Criminal Appeals' ruling in *Hernandez v. State*, No. PD-0176-25, 2025 WL 3693534 (Tex. Crim. App. Dec. 19, 2025), supports his argument. We disagree.

In *Hernandez,* a 911 caller reported a suspicious four-door Chevrolet Silverado driving at a slow speed in a rural area known for human smuggling. 2025 WL 3693534, at *1. Thirty minutes later, the responding officer approached the only vehicle in the area, which did not match the vehicle description or location provided by the 911 caller, and initiated a stop. *Id*. The driver initially refused to stop, and when he did stop, he refused to submit to the officer's requests. *Id*. The driver was convicted of evading arrest. *Id*. The Court of Criminal Appeals reversed the conviction, holding there was insufficient evidence to establish the officer's detention was supported by reasonable suspicion. *Id*. at *8. The court emphasized that there was no evidence that appellant was, had been, or soon would be engaged in criminal activity because there was "nothing unusual, suspicious, or criminal" about the driver's behavior before the stop. *Id.* at *7. Further, the court reasoned that absent an indication that human smuggling was at play, a "suspicious vehicle" in an area known for human smuggling was insufficient to establish reasonable suspicion. *Id*.

The facts in this case are more comparable to those known to the officer in *Navarette v. California*, 572 U.S. 393 (2014). In *Navarette*, a 911 caller reported a silver Ford F-150 truck

swerved and ran her off the road. *Id*. at 395. She provided the truck's license plate number and direction of travel. *Id*. An officer identified the truck with the exact same license plate near the area reported and conducted a stop. *Id*. The U.S. Supreme Court found that the officer had reasonable suspicion to initiate a traffic stop based on the facts of the case and emphasized that the 911 caller personally observed specific and dangerous driving conduct and reported more than a conclusory allegation. *Id*. at 403.

Here, viewed in the light most favorable to the trial court's decision, the evidence shows that Trooper Leanos responded to a call from Agent Ruiz who personally observed a vehicle "loading up" with four individuals who "jump[ed] into" Evans's car before it "sped off" in a "known smuggling area." Trooper Leanos confirmed that the area where the passengers loaded up was an "area specifically . . . known for human smuggling," and he testified that he was unable to see inside the vehicle before the stop because of the vehicle's window tint.

Collectively, these facts support a reasonable suspicion that Evans was engaged in illegal activity. *See United States v. Sokolow*, 490 U.S. 1, 9 (1989) (holding that factors which by themselves were "quite consistent with innocent travel" collectively amounted to reasonable suspicion.); *see also Arvizu*, 534 U.S. at 274–77 (considering "the totality of the circumstances" and rejecting a "divide-and-conquer" reasonable-suspicion analysis). Unlike in *Hernandez* where the 911 caller merely reported a "suspicious" driver, Agent Ruiz specifically told Trooper Leanos that he believed the individuals were being "smuggled" and "concealed," and he provided descriptions of rushed actions that are unusual, suspicious, and consistent with evading detection. *See Hernandez*, 2025 WL 3693534, at *7. Moreover, these actions were undertaken in an area that Trooper Leanos knew to be an area known for human smuggling. *See Johnson v. State,* 622 S.W.3d 378, 388 (Tex. Crim. App. 2021) (holding that officer had reasonable suspicion to conduct an

investigative detention because the area in question had a significant association with criminal activity and the occupants in the vehicle engaged in activity that appeared secretive and unusual for the time and place); *cf. Hernandez*, 2025 WL 3693534 at 93 ("There were no 'specific articulable facts' that [the officer] could rely upon to distinguish the ordinary driver on the dirt road from one possibly engaged in human trafficking." (citation omitted)). Like in *Navarette*, and also unlike *Hernandez*, Trooper Leanos pulled over a vehicle that precisely matched the make, model, color, and license plate number described by Agent Ruiz. *Compare Navarette*, 572 U.S. at 399, *with Hernandez*, 2025 WL 3693534 at 93. Further, Trooper Leanos provided the additional, specific fact that he was unable to see inside the vehicle because of the window tint. *See Derichsweiler*, 348 S.W.3d at 914; *see also Minor v. State*, No. 07-23-00397-CR, 2025 WL 211324, at *3 (Tex. App.—Amarillo Jan. 15, 2025, no pet.) (mem. op., not designated for publication) (affirming smuggling-of-persons conviction where evidence of concealment included, among other factors, heavily tinted windows).

Plainly put, not only was there sufficient evidence to suggest that Evans was engaged in some sort of suspicious activity, but also that the suspicious activity was directly tied to human smuggling. Viewing the evidence supported by the record in the light most favorable to the trial court's denial of Evans's motion, we conclude that the totality of the circumstances provides an objective, justifiable basis for the stop. Accordingly, we cannot conclude that the trial court abused its discretion in denying Evans's motion to suppress. We overrule Evans's fourth issue.

### CLERICAL ERROR IN THE WRITTEN JUDGMENT

The trial court's judgment identified the "Statute for Offense" as "Sec. 20.05(a)(1)(C) Penal Code." Evans, however, was charged and convicted under Texas Penal Code section 20.05(a)(1)(A). We have the authority to modify incorrect judgments when the necessary

information is available. TEX. R. APP. P. 43.2(b). *See Minor*, 2025 WL 211324, at \*4. Accordingly, we modify the judgment of conviction to state that the "Statute for Offense" is "20.05(a)(1)(A) Penal Code."

## CONCLUSION

Based on the foregoing reasons, we affirm the judgment of the trial court as modified.

Rebeca C. Martinez, Chief Justice

DO NOT PUBLISH