**In The**

*Court of Appeals*

*Ninth District of Texas at Beaumont*

_____

**NO. 09-20-00041-CR**

_____

**THE STATE OF TEXAS, Appellant**

**V.**

**TRACY TODD ADRIAN, Appellee**

**On Appeal from the County Court at Law**
**Polk County, Texas**
**Trial Cause No. 2019-0270**

**MEMORANDUM OPINION**

Tracy Todd Adrian was arrested and charged with Driving While Intoxicated. Prior to trial, Adrian filed a motion to suppress all evidence of the traffic stop, investigation and arrest alleging police violated his constitutional rights in making the stop. After a hearing, the trial court granted the motion, which the State appeals. In one issue in this interlocutory appeal, the State argues that the deputy's stop and detention of Adrian was supported by reasonable suspicion. *See* Tex. Code Crim. Proc. Ann. art. 44.01(a)(5) (permitting the State's appeal from an order granting

1

motion to suppress). For the following reasons, we reverse the trial court's order and remand.

## Background

Because the State stipulated that this was a warrantless stop and detention, the State had the burden of proof at the hearing on the motion to suppress.[1] Officer Tito Reyes was the sole testifying witness. Reyes testified that he was employed with the Livingston Police Department and on patrol in the early morning hours of April 7, 2019.[2] Reyes received a dispatch that "we had an attempt to locate for a black Ford F-150." The dispatcher advised that the truck was traveling eastbound around the 1700 block of West Church Street in Livingston, Texas. Reyes stated that he was told the driver was "possibly intoxicated[]" and that the black Ford F-150 also almost hit a guardrail. According to Reyes, the 911 caller actually called to report the black Ford F-150 two separate times. Reyes did not state whether the caller identified him

---

[1] To suppress evidence because of an alleged Fourth Amendment violation, the defendant bears the initial burden of producing some evidence that rebuts the presumption of proper police conduct. *Amador v. State*, 275 S.W.3d 872, 878 (Tex. Crim. App. 2009) (citing *Russell v. State*, 717 S.W.2d 7, 9 (Tex. Crim. App. 1986)). "A defendant satisfies this burden by establishing that a search or seizure occurred without a warrant." *Ford v. State*, 158 S.W.3d 488, 492 (Tex. Crim. App. 2005). Once the defendant has made this showing, the burden then shifts to the State to prove that the search or seizure was conducted pursuant to a warrant or was reasonable. Id. The State stipulated this case involved a warrantless stop and arrest. Therefore, the State had the burden to establish the reasonableness of the stop. *See id*.

[2] Reyes testified that his dash camera was not working that night and there is no video of the events prior to the arrest.

2

or herself to the 911 dispatcher before he stopped the F-150 pickup truck. No recording of the 911 call was admitted into evidence at the hearing.

Reyes testified that shortly after receiving the dispatch, he was traveling westbound in the 1600 block of West Church Street and observed a black Ford F-150 traveling eastbound. Reyes observed that "[i]nstead of driving to the median and making a safe turn from the median, it drove against traffic, as it – it miscalculated the turn." He explained that Adrian's maneuver was "unsafe because he's driving on the opposite side of the roadway." Reyes stated that there were no other vehicles on the roadway when Adrian made his turn. Reyes then initiated a traffic stop "[a]s soon as [the vehicle] turned into the Murphy parking lot." He estimated that he made the traffic stop about two minutes after he received the dispatch regarding the Ford F-150 pickup truck. The 911 caller also stopped at the location of the traffic stop and spoke with Officer Reyes. During the conversation, the caller confirmed that Reyes had indeed stopped the pickup truck the caller observed driving erratically and which they had been following.

After taking the case under advisement, on January 31, 2020, the trial court granted Adrian's motion to suppress. After the State filed its Request for Findings of Facts and Conclusions of Law, the trial court made the following Findings of Fact and Conclusions of Law:

3

## Findings of Fact

1. After midnight on April 7, 2019, Officer Tito Reyes of the Livingston Police Department, received a radio communication to be on the lookout for a black F150 that was heading eastbound on US 190 at about Walmart.

2. While traveling west bound to the described location, Officer Reyes received another communication that the vehicle almost hit a guardrail.

3. The dispatch was based on an anonymous 911 call that described the vehicle only as a black Ford 150. No other identification of the vehicle, such as the license number, model year or number of people in the vehicle was given.

4. One to two minutes after receiving the first dispatch, Officer Reyes observed a black Ford 150, which was being operated by Tracy Todd Adrian, the Defendant herein, making a sweeping left hand turn from eastbound in the paved median of US 190 into the Walmart driveway.

5. No other vehicles were between Officer Reyes and Defendant who were about a block apart at the beginning of the turn.

6. Under the circumstances existing at the time, Defendant's left hand turn was not unsafe.

7. Officer initiated the stop and detention of the Defendant's vehicle based solely on the report over the radio and his determination that the left hand turn by the Defendant was unsafe.

8. All evidence discovered in this cause directly resulted from Officer Reyes' stop of the Defendant's vehicle.

9. No warrant of any kind existed at any point relevant herein.

## Conclusions of Law

1. The stop of Defendant's vehicle was not justified as an exception to the requirement [of] a warrant because of Officer Reyes' lack of probable cause to believe that a traffic violation had occurred.

4

2. All evidence resulting from the stop of the Defendant's vehicle and his subsequent detention is excluded in this cause by Article 38.23, Code of Criminal Procedure.

The State timely appealed.

## Standard of Review

We use a bifurcated standard when reviewing a trial court's ruling on a motion to suppress. *Amador v. State*, 221 S.W.3d 666, 673 (Tex. Crim. App. 2007) (citing *Ford*, 158 S.W.3d at 493). Under that standard, we give the trial court's findings of historical fact almost total deference if the trial court's express and implied findings are supported by the evidence. *Id.* Likewise, if the trial court resolves a motion to suppress based on a resolution of mixed question of law and fact, its evaluation of the credibility and demeanor of the witnesses is given almost total deference. *Id.* In contrast, if the trial court's findings do not depend on the trial court's evaluations of the credibility and demeanor of the witnesses or turned on resolving a pure question of law, we review its ruling using a *de novo* standard. *Id.* (citing *Montanez v. State*, 195 S.W.3d 101, 107 (Tex. Crim. App. 2006)); *Guzman v. State*, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997). "Moreover, 'we review *de novo* whether the totality of circumstances is sufficient to support an officer's reasonable suspicion of criminal activity.'" *State v. Cortez*, 543 S.W.3d 198, 204 (Tex. Crim. App. 2018) (quoting *Crain v. State*, 315 S.W.3d 43, 49 (Tex. Crim. App. 2010).

5

Stated another way, when reviewing the trial court's ruling on a motion to suppress, we must view the evidence in the light most favorable to the trial court's ruling. *Wiede v. State*, 214 S.W.3d 17, 24 (Tex. Crim. App. 2007); *State v. Kelly*, 204 S.W.3d 808, 818 (Tex. Crim. App. 2006). We must uphold the trial court's ruling if it is supported by the record and correct under any theory of law applicable to the case, even if the trial court gave the wrong reason for its ruling. *See State v. Stevens*, 235 S.W.3d 736, 740 (Tex. Crim. App. 2007); *Armendariz v. State*, 123 S.W.3d 401, 404 (Tex. Crim. App. 2003), *cert. denied*, 541 U.S. 974 (2004).

**Analysis**

A warrantless detention of a person must be justified by reasonable suspicion. *Derichsweiler v. State,* 348 S.W.3d 906, 914 (Tex. Crim. App. 2011), *cert. denied*, 565 U.S. 840 (2011). "As a general matter, the Supreme Court has recognized that the decision to stop an automobile is reasonable where the police have probable cause to believe that a traffic violation has occurred." *Walter v. State*, 28 S.W.3d 538, 542 (Tex. Crim. App. 2000).

> However, a police officer may also lawfully stop a motorist when, based on the totality of the circumstances, he has reasonable suspicion for a temporary investigation on less than probable cause if the officer has specific articulable facts that, combined with rational inferences from those facts, would lead him reasonably to conclude that the person is, has been, or soon may be engaged in criminal activity.

*State v. Houghton*, 384 S.W.3d 441, 446–47 (Tex. App.—Fort Worth 2012, no pet.) (citing *Derichsweiler*, 348 S.W.3d at 914). "These articulable facts must amount to

6

more than a mere hunch or suspicion." *Abney v. State*, 394 S.W.3d 542, 548 (Tex. Crim. App. 2013). The State does not have to establish with absolute certainty that a crime occurred; the State's burden is proving that, under the totality of the circumstances, the stop was reasonable. *Id.*

In a reasonable suspicion inquiry, a reviewing court may look at the "officer's ability to 'draw on [his] own experience and specialized training to make inferences from and deductions about the cumulative information available to [him] that "might well elude an untrained person.'" *Ramirez-Tamayo v. State*, 537 S.W.3d 29, 36 (Tex. Crim. App. 2017) (quoting *United States v. Arvizu,* 534 U.S. 266, 273 (2002)). "A 911 police dispatcher is ordinarily regarded as a 'cooperating officer' for purposes of making this determination." *Derichsweiler*, 348 S.W.3d at 914 (citations omitted). In assessing reasonable suspicion, the reviewing court looks at the total of all objective information collectively available to the officers, including the 911 operator. *See id*. at 915.

The U.S. Supreme Court addressed the issue of reasonable suspicion based on information provided by a 911 caller in *Navarette v. California* and noted it "firmly rejected the argument 'that reasonable cause for a[n investigative stop] can only be based on the officer's personal observation, rather than on information supplied by another person.'" 572 U.S. 393, 397 (2014) (quoting *Adams v. Williams*, 407 U.S. 143, 147 (1972)). Further, the Court explained that even if the 911 caller is

7

anonymous, there was an adequate "indicia of reliability" for the officer to believe the caller's report. *Id* at 398. Specifically, the Supreme Court found the information reliable because, the call was contemporaneous, the caller identified the vehicle, and the caller used the 911 emergency system to report the accident. *Id*. at 399–400. The Supreme Court cautioned that even a reliable tip can only "justify an investigative stop…if it creates reasonable suspicion that 'criminal activity may be afoot.'" *Id*. at 401 (citations omitted). That means that the officer must have reasonable suspicion of an ongoing crime and not an isolated event of reckless driving. *Id*.

> Reasonable suspicion depends on the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act. Under that commonsense approach, we can appropriately recognize certain driving behaviors as sound indicia of drunk driving. Indeed, the accumulated experience of thousands of officers suggests that these sorts of erratic behaviors are strongly correlated with drunk driving. Of course, not all traffic infractions imply intoxication. Unconfirmed reports of driving without a seatbelt or slightly over the speed limit, for example, are so tenuously connected to drunk driving that a stop on those grounds alone would be constitutionally suspect. But a reliable tip alleging the dangerous behaviors discussed above generally would justify a traffic stop on suspicion of drunk driving.

*Id*. at 402 (internal citations and quotations omitted).

The Texas Court of Criminal Appeals explained in *Derichsweiler* that

> [a] brief investigative detention constitutes a significantly lesser intrusion upon the privacy and integrity of the person than a full-blown custodial arrest[,] [and] [f]or this reason, a warrantless investigative detention may be deemed 'reasonable' for Fourth Amendment purposes on the basis of a lesser quantum or quality of information—reasonable suspicion rather than probable cause.

8

348 S.W.3d at 916 (citing *Alabama v. White*, 496 U.S. 325, 330 (1990)). In *Derichsweiler*, the police were notified by a 911 caller of a person acting bizarrely though not overtly criminal. *See id.* at 917. The appellant was repeating this bizarre behavior and directing that behavior towards particular individuals, and although the police did not view the behavior, for a reasonable suspicion analysis it was enough "that the totality of the circumstances, viewed objectively and in the aggregate, suggests the realistic possibility of a criminal motive[.]" *Id.* In a reasonable suspicion analysis, the Court explained that the crux of the issue is whether the totality of reliable information "provided specific, articulable facts that, combined with reasonable inferences to be derived from those facts, would lead to the reasonable conclusion that the appellant was committing, or soon would be engaged in, some type of criminal activity." *Id.* at 915-16.

The Texas Court of Criminal Appeals and our sister Courts of Appeals have repeatedly determined that a detailed, contemporaneous, first person report by a 911 caller coupled with the officer's own observations corroborating the reliability of the concerned citizen's tip is enough to justify reasonable suspicion to stop and investigate a driver for suspected DWI. *See Leming v. State*, 493 S.W.3d 552, 564-65 (Tex. Crim. App. 2016); *see also Oringderff v. State*, 528 S.W.3d 582, 588–89 (Tex. App.—Texarkana 2017, no pet.); *Pate v. State*, 518 S.W.3d 911, 915–16 (Tex.

App.—Houston [1st Dist.] 2017, pet. ref'd); *LeCourias v. State*, 341 S.W.3d 483, 488 (Tex. App.—Houston [14th Dist.] 2011, no pet.).[3]

Based on an objective view of the totality of circumstances known to the arresting officer at the time of the stop, officer Reyes had reasonable suspicion to stop Adrian and investigate Adrian for suspected DWI.[4] *Amador v. State*, 275 S.W.3d 872, 878 (Tex. Crim. App. 2009); *see also Cortez*, 543 S.W.3d at 204. Similar to the circumstances in *Navarette*, Reyes relied on the contemporaneous anonymous caller's description of a vehicle driving erratically made to a 911 emergency system, and, in that case, the Supreme Court stated that although the officer did not view any "additional suspicious conduct" when he observed the alleged intoxicated driver, "an officer who already has such a reasonable suspicion

---

[3] In each of these cases, the court determined that an officer had reasonable suspicion to investigate a suspected intoxicated driver because the 911 caller provided a detailed, reliable report of the alleged intoxicated behavior of the driver including license plate numbers, identifying descriptions of the driver, accounts of erratic driving, or other behavior that indicated intoxicated driving, which information was then objectively verified by the officer when observing the allegedly intoxicated driver. In contrast, in *State v. Jennings*, the court concluded the arresting officer did not have reasonable suspicion when he relied on a "subjective opinion" absent any context that a person was intoxicated without additional "specific, articulable facts". The officer testified that he did not observe the defendant violate any traffic laws or appear to be intoxicated after she left the nursing home. The Court held that the State failed to demonstrate the "specific, articulable facts" that would justify reasonable suspicions of drunk driving. 511 S.W.3d 306, 311–12 (Tex. App.—San Antonio 2016, no pet.).

[4] The record does not demonstrate that the caller identified himself to the 911 dispatcher or the officer at the scene of the traffic stop.

need not surveil a vehicle at length in order to personally observe suspicious driving." *Navarette*, 572 U.S. at 404. Reyes had reliable information from the 911 caller who called twice, identified the vehicle, described the driver's erratic behavior, i.e., that he almost hit a guardrail, gave a location where the caller observed the alleged impaired driver operating his vehicle, and the caller stated they believed the driver was intoxicated. *See Brother v. State*, 166 S.W.3d 255, 259 (Tex. Crim. App. 2005) (citations omitted) ("To require officers who are apprised of detailed facts from citizen-eyewitnesses to observe suspects and wait until additional suspicious acts are committed, would be foolish and contrary to the balance of interests struck in *Terry* and its progeny."); *see also Navarette*, 572 U.S. at 404.

Reyes testified that he had been a patrol officer for seven years and that, in his experience, the time of night Adrian was reported is typically prime time for drunk driving to occur as bars close at two o'clock and people generally leave bars between one and two o'clock in the morning. *See Foster v. State*, 326 S.W.3d 609, 613 (Tex. Crim. App. 2010) (noting "time of day is a relevant factor in determining reasonable suspicion"). The information provided by the caller from two calls to the 911 operator, coupled with Reyes's experience, when viewed objectively from the totality of the circumstances, demonstrate an "indicia of reliability" sufficient to

11

provide Reyes with reasonable suspicion that Adrian was possibly impaired.[5] *See Navarette*, 572 U.S. at 404; *see also Pate*, 518 S.W.3d at 915–16 (holding under the totality of the circumstances officer had reasonable suspicion for stop although the officer did not observe any criminal behavior or traffic violations where caller identified the car, made contemporaneous report of erratic driving, and the officer located the vehicle at the location the caller provided). As such, the trial court erred when it granted Adrian's motion to suppress. We reverse the trial court's order of January 31, 2020 and remand the case to the trial court.

REVERSED AND REMANDED.

_____
CHARLES KREGER
Justice

Submitted on April 13, 2020
Opinion Delivered February 3, 2021
Do Not Publish

Before Kreger, Horton, and Johnson, JJ.

---

[5] We note that we are not commenting on whether the officer had reasonable suspicion to stop Adrian based on his observation of Adrian's alleged traffic violation.

12